UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KITCHEN,

          Plaintiff,        Civil Action No. 14-12883
                                  Honorable Victoria A. Roberts
                                  Magistrate Judge David R. Grand

v.

DANIEL HEYNS, *et al.*,

          Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO SEVER BASED ON MISJOINDER OF PARTIES AND CLAIMS [44]

Before the Court is the MDOC Defendants' Motion to Sever Based on Misjoinder of Parties and Claims, which was filed on December 26, 2014. (Doc. #44). *Pro se* plaintiff Michael Kitchen ("Kitchen"), an incarcerated person, filed a response to this motion on January 12, 2015. (Doc. #48). No reply was filed. An Order of Reference was entered on February 13, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #50).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' Motion to Sever [**44**] be **GRANTED**.

II.    REPORT

    A.    Background

Kitchen is a State of Michigan prisoner who, at all relevant times, was confined at either

the Macomb Correctional Facility ("MRF") or the Alger Correctional Facility ("LMF").[1]  (Doc. #1 at ¶3).  On July 23, 2014, and July 28, 2014, respectively, he filed a *pro se* civil rights complaint and an amended complaint against numerous Michigan Department of Corrections ("MDOC") officials.  (Docs. #1, 6).  Broadly speaking, Kitchen challenges the confiscation of certain of his property, his transfer from MRF to LMF, and the MDOC's adoption and use of a Segregation Incentive Program.  (*Id.*).  In total, Kitchen has now named 22 individuals employed at various MDOC facilities as defendants in this action.[2]

On December 26, 2014, the MDOC Defendants filed the instant motion to sever, asserting that Kitchen has improperly joined multiple, unrelated claims against multiple defendants in a single action.  (Doc. #44).  They argue that Kitchen should be allowed to proceed with only one claim and ask that the remaining claims and defendants be dismissed without prejudice.  (*Id.* at 11).

### B.  Kitchen's Allegations Against the Various Defendants

In order to consider the appropriateness of the relief requested by the MDOC Defendants, it is necessary to recite in some detail the specific allegations in Kitchen's complaint and amended complaint.  In his original complaint, Kitchen first alleges that in December 2013, Defendants LaCroix, Maciejewski, and "other unknown MDOC business office employees" confiscated $68.87 that he had intended to use to order two plaid shirts.  (Doc. #1 at ¶¶19-22).  Kitchen then alleges that, in January 2014, he filed a grievance against Defendant Hightower, asserting that Hightower stole these shirts.  (*Id.* at ¶¶23-25).  According to Kitchen, when he did not receive a response to this grievance, he submitted a "kite" to Defendant Steece requesting an

---

[1] According to the Court's docket, Kitchen currently is housed at the G. Robert Cotton Correctional Facility in Jackson, Michigan.

[2] Two of the individuals named as defendants by Kitchen – Defendants Lindemuth and Immel – are not listed as defendants on the Court's docket.

investigation into the alleged theft of his shirts. (*Id.* at ¶26). Kitchen claims that, the very next day, Defendants Finco, Stephenson, and Gambati transferred him to LMF in retaliation for accusing Hightower of stealing his shirts. (*Id.* at ¶¶27-28). Kitchen apparently arrived at LMF after a brief "layover" at a different facility. (*Id.* at ¶29).

Kitchen's complaint then sets forth a series of incidents that allegedly occurred when he was housed at LMF. First, Kitchen alleges that Defendant Stasewich accused him of "making 'trouble' at MRF with staff" and then confiscated various of Kitchen's personal property items. (*Id.* at ¶¶29-31). Kitchen then alleges that Defendant Stasewich, acting with the knowing acquiescence of Defendants Bauman and Lindemuth, prepared an improper "NOI" (notice of hearing) regarding the personal property items (which apparently had been confiscated as contraband). (*Id.* at ¶¶32-34). Kitchen claims that Defendant Prunick failed to ensure that he understood the charges, and, as a result, Kitchen was unable to adequately defend against the charges. (*Id.* at ¶¶35-39). Kitchen further alleges that Defendant Schram conducted the hearing on February 20, 2014, and failed to ensure that the minimal requirements of due process were met. (*Id.* at ¶¶38-53).

Shifting gears, Kitchen next alleges that, on March 31, 2014, he and other prisoners were ordered to return to their assigned cells at LMF. (*Id.* at ¶54). He claims that the water in his cell was shut off for a few hours, at which point his toilet backed up, and Defendants Tenuta and Seymour refused his request to turn the water back on. (*Id.* at ¶¶54-65). After Kitchen was released from his cell, Defendants Tenuta and Seymour allegedly sprayed his right hand and arm with disinfectant. (*Id.* at ¶¶66-67). Kitchen further alleges that Defendants Eubanks and Seymour, under threat of tasers, forced him to undergo a "body cavity search" and then searched his cell, haphazardly throwing around his personal property and legal papers, and confiscating

3

certain items. (*Id.* at ¶¶68-72). Kitchen claims that he spoke with Defendants Bauman, Immel, and Schram about the search and alleged confiscation of his legal papers and other property, and then filed several grievances. (*Id.* at ¶¶75-77). According to Kitchen, that same day, he was charged with misconduct and placed in segregation. (*Id.* at ¶¶78-80).

Switching topics completely, Kitchen alleges that Defendant Russell began harassing him with "sexual innuendoes." (*Id.* at ¶¶81-82). Kitchen alleges that he complained to Defendants Immel and Schram, but they did nothing. (*Id.* at ¶¶83-84). Kitchen further alleges that after he threatened to file a grievance against Russell, Russell "falsely alleged that [Kitchen] had threatened to do him physical harm" and placed him in administrative segregation. (*Id.* at ¶¶90-91). Kitchen also claims that Defendant Fleury filed a false statement in support of this misconduct charge, but he acknowledges that, after an administrative hearing, he was found guilty of the charges. (*Id.* at ¶¶92, 98).

Kitchen also claims that, from April 1, 2014, to April 5, 2014, while he was in administrative segregation, Defendant Eubanks deliberately failed to provide him with food. (*Id.* at ¶93). Kitchen claims that, after he filed a grievance regarding this "deprivation of food," Defendant Eubanks issued him another misconduct charge regarding a clock/radio that was considered "altered property." (*Id.* at ¶¶94-97). Kitchen asserts that this misconduct charge was vague, that he was not permitted to properly defend himself at the April 8, 2014, hearing, and that his appeal of the (apparently guilty) finding at the hearing is still pending. (*Id.* at ¶¶98-112, 130). Kitchen also complains about alleged procedural deficiencies in this misconduct hearing. (*Id.* at ¶¶113-36).

In his amended complaint, Kitchen alleges that Defendant Hill retaliated against him for filing grievances against Defendants Russell and Eubanks by falsely accusing Kitchen of rule

4

violations and then charging him with Insolence and Misusing Property. (Doc. #6 at ¶¶7-13). Kitchen then makes allegations against Defendants Heyns, Finco, and Bauman regarding the MDOC's Segregation Incentive Program. (*Id.* at ¶¶14-36).

All told, Kitchen sets forth numerous claims in his original and amended complaints. He alleges violations of the First, Eighth, and Fourteenth Amendments; the Double Jeopardy Clause; the Ex Post Facto Clause; various provisions of the Michigan Constitution; state law claims of assault and battery, malicious prosecution, abuse of process, and conversion of property; and violations of the Administrative Procedures Act. (Docs. #1, 6). The MDOC Defendants assert that Kitchen's unrelated claims against the 22 named defendants are improperly joined in a single action and that severance of certain claims and parties is appropriate. (Doc. #44).

**C.    Analysis**

Courts have recognized that, "The joinder of claims, parties, and remedies is 'strongly encouraged' when appropriate to further judicial economy and fairness." *Fields v. Martin*, 2013 WL 5182182, at *4 (E.D. Mich. Sept. 13, 2013) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)). This does not mean, however, that parties should be permitted to join multiple defendants in a single action when the claims are unrelated. *See Fields*, 2013 WL 5182182, at *4 (citing *Pruden v. SCI Camp Hill*, 252 F. App'x 436, 437 (3d Cir. 2007) and *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)).

With respect to the joinder of multiple parties in a single lawsuit, Federal Rule of Civil Procedure 20(a)(2) provides:

> Persons … may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the

action.

When parties are misjoined, "the court may, at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. *See also Proctor v. Applegate*, 661 F. Supp. 2d 743, 781 (E.D. Mich. 2009) (dismissal of misjoined parties is appropriate under Rule 21) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988)); *Pruden*, 252 F. App'x at 437 (dismissal appropriate where plaintiff claimed multiple constitutional violations by different defendants arising out of different transactions and occurrences); *George*, 507 F.3d at 607 (unrelated claims by prisoner against different defendants belong in different suits).

For Kitchen's claims to be properly joined, then, they must satisfy both requirements of Rule 20(a): (1) there must be a right to relief arising out of the same transaction or occurrence, and (2) there must be a question of law or fact common to all defendants. *See Nali v. Michigan Dep't of Corr.*, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 19, 2007) (citing *Crutcher v. Commonwealth of Kentucky*, 1992 WL 98020, at *3 (6th Cir. May 11, 1992)). As the *Nali* court recognized, courts may consider many different factors when determining whether civil rights claims arise from the same transaction or occurrence; these factors often include "the time period during which the alleged acts occurred; whether the acts of discrimination are related; whether more than one act of discrimination is alleged; whether the same supervisors were involved; and whether the defendants were at different geographical locations." *Nali*, 2007 WL 4465247, at *3 (citing *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 323-25 (S.D. Ohio 2002)).

In this case, Kitchen has failed to meet Rule 20(a)'s two-part test. He alleges discriminatory acts at two different correctional facilities, located in two separate judicial districts, over the course of an eight-month period. (Docs. #1, 6). Specifically, Kitchen first alleges that, between December 2013 and January 2014, while he was incarcerated at MRF,

Defendants LaCroix, Maciejewski, and (possibly) Hightower confiscated $68.87 that he had intended to use to order two shirts and/or stole these shirts. (Doc. #1 at ¶¶19-25). Kitchen further alleges that he kited Defendant Steece, requesting an investigation into the alleged theft of his shirts and, two days later, Defendants Finco, Stephenson, and Gambati illegally transferred him to LMF in retaliation for his accusations about the theft of his shirts. (*Id.* at ¶¶26-28).

Once Kitchen was transferred to LMF, in January 2014, he alleges that the remaining defendants, at various times: confiscated his legal papers and personal property items as contraband; deprived him of due process at certain administrative hearings; shut off the water to his cell; sprayed disinfectant on his arm; forced him to undergo a strip search; issued false misconduct charges; placed him in administrative segregation; deprived him of food; and sexually harassed him. (Doc. #1 at ¶¶29-97). In his amended complaint, Kitchen adds additional allegations of false misconduct charges and regarding the MDOC's Segregation Incentive Program. (Doc. #6).

In attempting to rebut the MDOC Defendants' misjoinder argument, Kitchen asserts that all of the claims in his complaint and amended complaint are "derived from one incident" – namely, the grievance he filed against Hightower for allegedly stealing his shirts. (Doc. #48 at 3, 7). Specifically, Kitchen asserts that there is some unspecified "code" among the MDOC Defendants that actions should be taken to "break" him in order to prevent him from continuing to file grievances. (*Id.* at 3-4). The problem, however, is that Kitchen has offered no evidence supporting his conclusory allegations of an overarching conspiracy among some 22 individuals employed at two different correctional facilities (as well as the MDOC's central office in Lansing). Despite Kitchen's vague allegations that he is being "hounded" from "facility to facility," it is apparent that each of his separate claims presents different questions of law and

7

fact and will require a detailed and particularized analysis.  In a passage equally applicable on the facts of this case, the *Nali* court held:

> Because the claims set forth in the Complaint are factually separable, took place at different time periods, allege that different defendants violated his civil rights in separate ways, and occurred at differing geographic locations, permissive joinder of all [of the] individual defendants would not provide overlapping proof or testimony.

*Nali*, 2007 WL 4465247, at *3.  Here, too, considering all of the factual allegations in Kitchen's complaint and amended complaint, Kitchen has failed to demonstrate a right to relief arising out of the same transaction or occurrence (or series of transactions or occurrences), or that there is a question of law or fact common to all defendants.  *See Fields*, 2013 WL 5182182, at *4 (Rule 20(a)(2) not satisfied where complaint pled claims involving "distinct factual scenarios, different time periods and different legal standards") (internal quotations and citations omitted).  Thus, the Court finds merit to the MDOC Defendants' misjoinder argument.

Under Fed. R. Civ. P. 21, misjoinder of parties is not a ground for dismissing an action.  Instead, Rule 21 provides two remedial options:  (1) misjoined parties may be dropped "on just terms"; or (2) any claims against misjoined parties may be severed and proceeded with separately.  *See Crawford v. Prison Health Servs.*, 2012 WL 4740219, at *2 (W.D. Mich. Oct. 3, 2012).  Several federal courts have interpreted "on just terms" to mean "without gratuitous harm to the parties."  *Harris v. Gerth*, 2008 WL 5424134, at *5 (E.D. Mich. Dec. 30, 2008) (citing cases).  In this case, no harm to Kitchen is apparent from the record, as the litigation is in a very early stage, and he has articulated none.[3]  For these reasons, the Court finds it appropriate to

---

[3] Because Kitchen's causes of action occurred no earlier than December 2013, it does not appear that there are any statute of limitations concerns.  Moreover, Michigan law provides for the tolling of the limitations period while an earlier action was pending that was later dismissed without prejudice.  *See Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).  Thus, where the Court is recommending dismissal of certain claims and defendants without prejudice, Kitchen will not suffer any gratuitous harm from a statute of limitations perspective.

sever Kitchen's First and Fourteenth Amendment (and corresponding Michigan Constitutional) claims against Defendants LaCroix, Maciejewski, Finco, Stephenson, Steece, Gambati, and Hightower, and allow Kitchen to proceed with those claims against those defendants. (Doc. #1 at ¶¶19-28, 137-38). The remaining claims in Kitchen's complaint and amended complaint, and their corresponding defendants, should be dismissed without prejudice.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the MDOC Defendants' Motion to Sever Based on Misjoinder of Parties and Claims [**44**] be **GRANTED**. Kitchen should be permitted to proceed with his First and Fourteenth Amendment (and corresponding Michigan Constitutional) claims against Defendants LaCroix, Maciejewski, Finco, Stephenson, Steece, Gambati, and Hightower. The remainder of Kitchen's claims against Defendants Heyns, Russell, Bauman, Schram, Prunick, Hursh, Tenuta, Seymour, Stasewich, Eubanks, Russell, Fleury, Hill, Lindemuth, and Immel should be dismissed without prejudice.

Dated: May 4, 2015                 s/David R. Grand
Ann Arbor, Michigan            DAVID R. GRAND
                                                    United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all

objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 4, 2015.

                                        s/Eddrey O. Butts
                                        EDDREY O. BUTTS
                                        Case Manager