UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KITCHEN,

                Plaintiff,        Civil Action No. 14-12883
                                       Honorable Victoria A. Roberts
                                       Magistrate Judge David R. Grand

v.

DANIEL HEYNS, *et al.*,

                Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [72], PLAINTIFF'S
MOTION FOR VOLUNTARY DISMISSAL [77], PLAINTIFF'S RENEWED
MOTION TO ENFORCE INJUNCTION OR TO CLARIFY RECORD [82],
AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [83]**

**and**

**ORDER DENYING PLAINTIFF'S
MOTION TO COMPEL DISCOVERY [78]**

    Before the Court are five related motions: (1) Defendants' Motion for Summary Judgment, filed on September 18, 2015; (2) Plaintiff's Motion for Voluntary Dismissal, filed on October 5, 2015; (3) Plaintiff's "Motion to Compel Discovery and in Opposition to Defendants' Motion for Summary Judgment," filed on October 5, 2015; (4) Plaintiff's "Renewed Motion to Enforce Injunction or to Clarify Record," filed on October 29, 2015; and (5) Plaintiff's "Motion for Partial Summary Judgment and Reply to Defendants' Response," filed on November 2, 2015. (Docs. #72, 77, 78, 82, 83).

    An Order of Reference was entered on February 13, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #50). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f).

Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

I. REPORT

    A. Background

Plaintiff Michael Kitchen ("Kitchen") is a State of Michigan prisoner who, at all relevant times, was confined at either the Macomb Correctional Facility ("MRF") or the Alger Correctional Facility ("LMF").[1] (Doc. #1 at ¶3). On July 23, 2014, and July 28, 2014, respectively, Kitchen filed a *pro se* civil rights complaint and amended complaint against numerous Michigan Department of Corrections ("MDOC") officials. (Docs. #1, 6). In total, Kitchen named more than twenty individuals employed at various MDOC facilities as defendants in this action.

On May 4, 2015, this Court recommended granting a motion to sever filed by the defendants. (Doc. #54). Specifically, the Court found it appropriate to sever Kitchen's First and Fourteenth Amendment claims against Defendants Edward Hightower, Cindy Maciejewski, Janine LaCroix, George Stephenson, Frank Sgambati, Kristopher Steece, and Thomas Finco, and allow Kitchen to proceed with these claims against these defendants. (*Id.* at 9). The Court recommended that the remainder of Kitchen's claims against all other defendants be dismissed without prejudice. (*Id.*). The District Court adopted this Court's report and recommendation on August 11, 2015. (Doc. #63).

    B. The Relevant Allegations

Presently, then, all that remains in this action is Kitchen's First Amendment retaliation claim against Defendants Hightower, Stephenson, Sgambati, Steece, and Finco (collectively

---

[1] According to the Court's docket, Kitchen currently is housed at the Michigan Reformatory in Ionia, Michigan.

"Defendants").[2] Those claims are set forth in paragraphs 19-28 and 137-38 of Kitchen's original complaint. (Doc. #1).

The gravamen of Kitchen's complaint is that $68.87 was removed from his prison account to pay for two shirts, which he never received. Kitchen first accuses MDOC business office employees of confiscating his money in December 2013. (*Id.* at ¶¶19-22). He then alleges that, in January 2014, he filed a grievance against Defendant Hightower, asserting that Hightower "may have stolen the shirts." (*Id.* at ¶¶23-25). According to Kitchen, when he did not receive a response to this grievance, he submitted a "kite" to Defendant Steece requesting an investigation into Hightower's alleged theft of his shirts. (*Id.* at ¶26). Kitchen then alleges that, the very next day, Defendants Finco, Stephenson, and Sgambati transferred him to LMF in retaliation for accusing Hightower of stealing his shirts. (*Id.* at ¶¶27-28). It is this transfer that forms the basis of Kitchen's First Amendment retaliation claim.

### C. The Pending Motions

On September 18, 2015, Defendants moved for summary judgment on Kitchen's First Amendment retaliation claim.[3] (Doc. #72). On October 5, 2015, Kitchen filed a single document captioned "Plaintiff's Motion to Compel Discovery and in Opposition to Defendants' Motion for Summary Judgment." (Doc. #78). On October 20, 2015, Defendants filed a combined reply brief in support of their motion for summary judgment and response to Kitchen's

---

[2] In its prior report and recommendation, this Court also recommended permitting Kitchen to proceed with his Fourteenth Amendment (due process) claim against Defendants LaCroix and Maciejewski. (Doc. #54). However, after Defendants filed the instant motion for summary judgment, arguing that this claim fails as a matter of law, Kitchen moved to voluntarily dismiss it. (Doc. #77). Because the Court agrees that Kitchen's Fourteenth Amendment claim lacks merit, it **RECOMMENDS GRANTING** Kitchen's Motion for Voluntary Dismissal [**77**] and dismissing Kitchen's due process claim against Defendants LaCroix and Maciejewski in its entirety and with prejudice.

[3] At the same time, Defendants filed a Motion to Stay Discovery. (Doc. #73). This motion is denied as moot by separate order. (Doc. #86).

motion for discovery. (Doc. #81). Subsequently, Kitchen filed a "Motion for Partial Summary Judgment & Reply to Defendants' Response," on November 2, 2015, to which Defendants responded in part on November 12, 2015. (Docs. #83, 84). Kitchen also filed a "Renewed Motion to Enforce Injunction or to Clarify Record," on October 29, 2015, to which Defendants responded on November 12, 2015. (Docs. #82, 84). The Court has reviewed and considered all of these filings and will address them in detail below.

### D. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In

4

response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**E.     Analysis**

Kitchen's sole remaining claim[4] is that Defendants transferred him (or caused him to be transferred) from MRF to LMF in retaliation for the complaints he made about the "stolen" shirts – complaints which later turned out to be unfounded.[5] In their motion, Defendants argue that summary judgment is warranted on Kitchen's First Amendment retaliation claim because there is no evidence Defendants took any adverse action against him due to his alleged protected activity.[6] (Doc. #72 at 15-17). As discussed below, the Court finds merit to this argument.

Under Sixth Circuit law, to establish a claim for First Amendment retaliation, the plaintiff must show that: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse

---

[4] In his response to Defendants' motion for summary judgment, Kitchen – for the first time – indicates that he "now pursues claims of retaliation and state law claims of abuse of process against the remaining Defendants." (Doc. #78 at 6). Kitchen did not plead a claim for "abuse of process" in either his complaint or amended complaint, however. Because Kitchen did not give Defendants fair notice that he was pursuing a state law abuse of process claim, the Court will not consider the merits of such a claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[5] Kitchen's complaint was ambiguous on this matter, as he wrote, "The atmosphere and environment at MRF can easily lead someone into believing that type of conduct on behalf of Hightower, even though it may indeed be a mistake." (Doc. #1 at ¶25). Although Kitchen never goes so far as to explicitly concede that he was wrong in accusing Defendant Hightower of stealing his shirts, he argues in response to Defendants' motion only that this belief was reasonable "at the time" he first made the accusation. (Doc. #78 at 12).

[6] Defendants also assert that Kitchen's claim is barred by the doctrine of qualified immunity. (Doc. #72 at 18-21). Because the Court is recommending granting summary judgment in favor of Defendants on other grounds, it need not address the merits of this argument.

action – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)).

In this case, the Court will assume for purposes of the instant motion – as do Defendants – that Kitchen's complaints about the "stolen" shirts constitute protected activity under the First Amendment.[7] Defendants argue that Kitchen's retaliation claims nevertheless fail because: (1) he was not subject to an adverse action; and (2) even if he was, he has not established a causal link between the protected activity and the adverse action. (Doc. #72 at 15-17).

As an initial matter, Defendants argue that Kitchen's transfer from MRF to LMF does not constitute an adverse action for purposes of a First Amendment retaliation claim. (*Id.* at 15-16). Indeed, courts have held that, "As a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). In other words, "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a person of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Only when a transfer results in more restrictions – such as an increased security level or

---

[7] After Defendants filed their reply brief (Doc. #81), in which they clearly indicated that they were assuming for purposes of their motion that Kitchen engaged in protected conduct, Kitchen filed a "Motion for Partial Summary Judgment," asking that the Court "enter an order granting partial summary judgment on Plaintiff's claims of being involved in protected conduct at the time of this incident." (Doc. #83 at 5). The Court finds such a request, which would invite summary judgment practice on an element-by-element basis, inappropriate and, in any event, unnecessary in this instance, because the Court is assuming for purposes of resolving Defendants' dispositive motion that Kitchen did, in fact, engage in protected activity, thus satisfying the first element of his First Amendment retaliation claim. **IT IS THEREFORE RECOMMENDED** that Kitchen's motion for partial summary judgment [**83**] be **DENIED AS MOOT**.

limited access to the courts – does it potentially rise to the level of an adverse action. *See, e.g., Siggers-El*, 412 F.3d at 702 (finding that transfer could constitute adverse action where plaintiff "also suffered a number of foreseeable consequences that inhibited [his] ability to access the courts"); *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (transfers that "result in more restrictions and fewer privileges for prisoners are considered adverse"); *King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012) (adverse action where prison officials increased the plaintiff's security level from II to III by transferring between prisons). Where a prisoner alleges no such "foreseeable consequences," the retaliation claim fails as a matter of law. *See Siggers-El*, 412 F.3d at 704.

Nowhere in Kitchen's complaint or amended complaint does he allege – let alone provide evidence – that his transfer to LMF resulted in a security-level increase or otherwise resulted in foreseeable negative consequences. In response to Defendants' motion for summary judgment, however, Kitchen asserts for the first time that the "transfer separated, and was intended to separate, Plaintiff from and prevented visits with his family and friends, as well as was intended to punish and intimidate Plaintiff given [LMF's] well known significant level of violence." (Doc. #78 at 13). Courts have recognized that, under certain circumstances, a transfer to a facility "far away from [a plaintiff's] relatives[] arguably may amount to adverse action." *Moses v. Braman*, 2015 WL 1737062, at *3 (W.D. Mich. Apr. 16, 2015) (citing *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009) (holding that a threat to transfer a prisoner to another institution far from his family was sufficiently adverse to be actionable)). Thus, if Kitchen could establish that Defendants transferred him to LMF in order to prevent visits with his family and friends, as he now alleges, he would arguably have suffered a cognizable adverse action.

Defendants cry foul in their reply brief, claiming that Kitchen never raised these

7

allegations in his complaint, and arguing that it is "improper to raise this new theory" in response to their motion for summary judgment. (Doc. #81). The Court agrees with Defendants that nowhere in Kitchen's complaint does he allege that he was subjected to these "foreseeable negative consequences" when he was transferred. However, in a grievance appeal he submitted in connection with his transfer, Kitchen did allege that the transfer was "intended to disrupt [his] bonds or ties with [his] family." (Doc. #78-1 at 5). Because Kitchen is proceeding *pro se*, and because Defendants were at least arguably on notice from the content of this grievance appeal that he was alleging he suffered foreseeable negative consequences as a result of his transfer to LMF, the Court will assume for purposes of resolving Defendants' motion for summary judgment that Kitchen has at least raised a material question of fact as to whether his transfer constituted an adverse action for purposes of his First Amendment retaliation claim.

Nevertheless, Kitchen's First Amendment retaliation claim fails because he has not established a genuine issue of material fact regarding causation. In order to satisfy the causation element of a *prima facie* case for retaliation, the plaintiff "must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Neal v. Nowack*, 2010 WL 3277863, at *4 (E.D. Mich. July 9, 2010) (citing *Thaddeus*-X, 175 F.3d at 399). However, "Bare allegations by the plaintiff of malice on the part of a defendant are not enough to establish retaliation claims." *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). And, once the plaintiff has satisfied his burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *See Neal*, 2010 WL 3277863, at *4 (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)).

In this case, Defendants have come forward with evidence – in the form of sworn

8

affidavits – that Kitchen's complaints about the "stolen" shirts were not a motivating factor in the decision to transfer him to LMF. Specifically, Defendant Hightower affirmed that he was not aware of any "investigation" into his alleged theft of Kitchen's shirts; that he is not involved in the decision-making process with respect to prisoner transfers; and that he played "no role whatsoever" in Kitchen's transfer to LMF. (Doc. #72-2 at ¶¶4-5). Similarly, Defendant Steece affirmed that he is not involved in the transfer of prisoners, did not request Kitchen's transfer, and "took no action for the purpose of retaliating against prisoner Kitchen." (Doc. #72-7 at ¶4). And, Defendant Finco – who is employed as Deputy Director of the Correctional Facilities Administration – affirmed that he did not recommend Kitchen's transfer to LMF, nor was he consulted regarding this transfer. (Doc. #72-8 at ¶8).

Kitchen has come forward with no evidence rebutting this unambiguous affidavit testimony. Courts have recognized that, "There can be no causation where the defendant is not the decision-maker." *Richards v. Sheltrown*, 2015 WL 1810254, at *6 (E.D. Mich. Apr. 17, 2015) (citing *Smith*, 260 F.3d at 1038); *see also McCaskill v. Dettloff*, 2014 WL 7403857, at *4 (E.D. Mich. Dec. 30, 2014) (generally speaking, a causal connection cannot be established when the accused prison official was not the decision-maker with regard to the alleged act of retaliation). For these reasons, Kitchen has failed to establish a genuine issue of material fact as to the causation element of his First Amendment retaliation claim against Defendants Hightower, Steece, or Finco, and those defendants are entitled to summary judgment.

With respect to Defendants Stephenson and Sgambati, Defendants offered their affidavit testimony indicating that Kitchen was transferred out of MRF for a legitimate, non-retaliatory reason – namely, to create bed space for an incoming prisoner requiring "VPP programming." (Doc. #72-5 at ¶3). This testimony is supported by the transfer order memorializing Kitchen's

9

move from MRF to LMF. (Doc. #72-5 at 4 ("Transfer to accommodate bedspace for incoming VPP prisoner. This will be a spon for spon trade, Overnight at KCF.")). Defendants Stephenson and Sgambati both affirmed that Kitchen's transfer to LMF was not retaliatory, had nothing to do with his complaints that Defendant Hightower "stole" his shirts, and would have occurred regardless of Kitchen's complaints about the shirts. (Doc. #72-5 at ¶3; Doc. #72-6 at ¶3).

In the face of this evidence, Kitchen first asserts that he has "come forward with significant evidence satisfying the temporal proximity between the filing of the complaints and the transfer to LMF …." (Doc. #78 at 14). Specifically, Kitchen asserts that it was only nine days after he filed the grievance regarding Defendant Hightower's alleged theft of his shirts – and only one day after he wrote a follow-up letter to Defendant Steece – that his transfer to LMF was ordered. (*Id.* at 15). Courts have recognized that temporal proximity between the adverse action and the protected conduct can provide indirect evidence of a retaliatory motive. *See King*, 680 F.3d at 695. However, the law is equally clear that standing alone, "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004); *see also Pasley v. Maderi*, 2014 WL 5386914, at *3 (E.D. Mich. Sept. 15, 2014). Thus, the fact that Kitchen was transferred to LMF less than two weeks after complaining of the alleged theft of his shirts is insufficient in and of itself to establish causation.

In his "motion to compel," (Doc. #78), Kitchen attempts to overcome these shortcomings by asserting that further discovery will provide the additional evidence of causation necessary to defeat summary judgment. Although phrased as a "motion to compel," because Kitchen does not specify any particular discovery request which he is seeking to compel a response to, his request is more properly construed as a Rule 56(d) motion to obtain discovery for purposes of

10

responding to Defendants' motion for summary judgment. (Doc. #78). A party requesting such additional discovery must demonstrate, via affidavit, "its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000); *see also Plott v. General Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995). Bare allegations or vague assertions of need without supporting proof are insufficient. *See Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409-10 (6th Cir. 1998).

In this case, Kitchen has submitted an affidavit, broadly asserting that "discovery will reveal that MRF officials have a pattern or practice of transferring prisoners who[] file grievances out of MRF in order to punish them by preventing their visits with family and friends, and into less desirable and violent conditions of confinement." (Doc. #78 at 20). Kitchen further asserts that, through discovery, he believes he will "uncover evidence showing that [] these transfers were intended to discourage and suppress the filing of grievances and other written complaints against MRF staff," and that he will "obtain affidavits from other prisoners whom have been subjected to these types of transfers." (*Id.*). And, with respect to his own specific First Amendment retaliation claim, Kitchen asserts that, if permitted to conduct additional discovery, he will:

> … uncover documents, records, affidavits from prisoners and other materials demonstrating that, motivated at least in part by a desire to suppress, discourage, and/or punish me because of my complaints, MRF officials transferred me into the LMF facility well aware of its environment and conditions of violence and the high rate of misconduct charges being filed against prisoners and their placement in solitary confinement, in the hopes that such an environment would have a negative impact on me, such as me being subjected to numerous misconduct charges, confined to solitary confinement, and caught up in the violence at LMF either by being attacked, defending myself against attacks, or absorbing the culture and attacking other prisoners myself.

(*Id.* at 21).

These vague and conclusory assertions are inadequate to entitle Kitchen to the relief he

11

seeks. Kitchen fails to identify with particularity any evidence he has been prevented from obtaining, and while Defendants have apparently not responded to his discovery requests, Kitchen does not explain why, more than one year after filing his complaint, he still has not had adequate time to obtain the third-party evidence which he claims will support his arguments. Finally, despite his stated belief that discovery will allow him to uncover evidence that his transfer to LMF was "motivated at least in part" by a desire to punish him or to suppress his complaints, the evidence discussed above establishes just the opposite. Specifically, Defendants Hightower, Steece, and Finco clearly and unequivocally affirmed that they had no involvement in the decision to transfer Kitchen to LMF. (Doc. #72-2 at ¶¶4-5; Doc. #72-7 at ¶4; Doc. #72-8 at ¶8). And, Defendants Stephenson and Sgambati affirmed that Kitchen's transfer to LMF would have occurred regardless of his complaints about the "stolen" shirts. (Doc. #72-5 at ¶3; Doc. #72-6 at ¶3). Kitchen has not explained how any evidence he seeks to obtain would undermine those averments. Given these facts, Kitchen has not established his entitlement to the relief he seeks. *Lewis*, 135 F.3d at 409-10. Thus, **IT IS ORDERED** that Kitchen's motion to obtain additional discovery [**78**] is **DENIED**.

For all of these reasons, Kitchen has failed to raise a material question of fact as to his allegation that Defendants transferred him to LMF in retaliation for his complaints about the "stolen" shirts. Consequently, Defendants are entitled to summary judgment on Kitchen's First Amendment retaliation claim.[8]

---

[8] As set forth above, on October 29, 2015, Kitchen filed a "Renewed Motion to Enforce Injunction or to Clarify Record." (Doc. #82). In that motion, Kitchen asks the Court to "clarify the record as to whether the injunction issued on December 2, 2014 (Doc. #37) is still in place, and, if so, enforce the injunction against the Michigan Department of Corrections (MDOC), the Department of Attorney General (DAG), the remaining Defendants, and/or their counsel, Assistant Attorney General Kevin Himebaugh, and require the immediate return of Plaintiff's legal materials." (*Id.* at 1). The Court notes, however, that Defendants previously represented to

## II.     RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [**72**] be **GRANTED**. **IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Voluntary Dismissal [**77**] be **GRANTED**. And, finally, **IT IS RECOMMENDED** that Plaintiff's "Renewed Motion to Enforce Injunction or to Clarify Record" [**82**] and Plaintiff's "Motion for Partial Summary Judgment" [**83**] be **DENIED AS MOOT**.

Dated: November 30, 2015                    s/David R. Grand
Ann Arbor, Michigan                         DAVID R. GRAND
                                            United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation and Order will be preserved for the Court's appellate review; raising some objections but not others will not

---

this Court, via a notice and sworn affidavit, that a search had been conducted for Kitchen's legal materials, and no record or evidence could be found indicating that Kitchen's legal materials had in fact been confiscated. (Doc. #45). Moreover, as Defendants persuasively argue, Kitchen's request for continued injunctive relief is moot, because his claim regarding the confiscation of his legal materials was severed and is no longer before this Court. (Doc. #84 (citing *Saha v. Ohio State Univ.*, 259 F. App'x 779, 780 (6th Cir. 2008)). Thus, where the underlying claim was dismissed without prejudice, and where this Court is recommending granting summary judgment in Defendants' favor on Kitchen's remaining claim for retaliatory transfer, **IT IS RECOMMENDED** that Kitchen's "Renewed Motion to Enforce Injunction or to Clarify Record" [**82**] be **DENIED**.

13

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2015.

<u>s/Eddrey O. Butts</u>
EDDREY O. BUTTS
Case Manager