UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KITCHEN,

                Plaintiff,        Civil Action No. 14-12883
                                         Honorable Victoria A. Roberts
                                         Magistrate Judge David R. Grand

v.

DANIEL HEYNS, *et al.*,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [153]**

Before the Court is Defendants' Motion for Summary Judgment, which was filed on February 8, 2018. (Doc. #153). Plaintiff Michael Kitchen ("Kitchen") filed a response to this motion on May 18, 2018 (Doc. #165), and Defendants filed a reply on May 30, 2018 (Doc. #166). An Order of Reference was entered on February 8, 2017, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. § 636(b). (Doc. #99). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    REPORT**

    **A.    Background**

Kitchen is a State of Michigan prisoner who, at all relevant times, was confined at either the Macomb Correctional Facility ("MRF") or the Alger Correctional Facility ("LMF"). (Doc. #1 at ¶ 3). On July 23, 2014, and July 28, 2014, respectively, pursuant to 42 U.S.C. § 1983, Kitchen filed a *pro se* civil rights complaint and amended complaint against numerous Michigan

1

Department of Corrections ("MDOC") officials. (Docs. #1, #6). In total, Kitchen named more than twenty individuals employed at various MDOC facilities as defendants in this action.

The sole remaining claim in this action is Kitchen's retaliatory-transfer claim against Defendants Edward Hightower, George Stephenson, Frank Sgambati, Kristopher Steece, and Thomas Finco (collectively "Defendants"), each of whom was employed at MRF during the relevant time. (Doc. #153 at 5). That claim is set forth in paragraphs 19-28 and 137-38 of Kitchen's original complaint. (Doc. #1). Specifically, Kitchen alleges that, in December 2013, $68.87 was removed from his prison account to pay for two shirts that he ordered but never received. Kitchen further alleges that, when he had not received the shirts by January 20, 2014, he filed a grievance against Defendant Hightower, asserting that Hightower "may have stolen the shirts." (*Id.* at ¶¶ 23-25). According to Kitchen, when he did not receive a response to this grievance by January 28, 2014, he then submitted a "kite" to Defendant Steece requesting an investigation into Hightower's alleged theft of his shirts. (*Id.* at ¶ 26). Kitchen then alleges that, the very next day, Defendants Stephenson and Sgambati – "with the knowledge, approval, or knowing acquiescence" of Defendant Finco – transferred him to LMF in retaliation for accusing Hightower of stealing his shirts. (*Id.* at ¶¶ 27-28). It is this transfer that forms the basis of Kitchen's First Amendment retaliation claim. More specifically, Kitchen argues that the transfer constitutes an "adverse action" because it resulted in him being housed in a facility further away from his family and other visitors.

**B.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga*

*County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C.     Analysis**

As set forth above, Kitchen's sole remaining claim is that Defendants violated his First Amendment rights when they transferred him from MRF to LMF, allegedly in retaliation for his filing the grievance in which he accused Hightower of stealing his shirts. In order to establish a claim for First Amendment retaliation, Kitchen must show that: (1) he engaged in constitutionally protected conduct; (2) an adverse action was taken against him that would deter

3

a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action. *See Kennedy v. City of Villa Hills*, 635 F.3d 210, 217 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*)). In this case, while Defendants do not dispute that Kitchen's complaints about the allegedly "stolen" shirts constitute protected activity under the First Amendment, they present numerous other arguments in support of their summary judgment motion with respect to his retaliation claim. First, Defendants argue that they are entitled to qualified immunity because, at the time in question, it was "not clearly established that a transfer constitutes an adverse action absent a denial of access to the courts or a change in confinement type amounting to placement in segregation," neither of which took place here. (Doc. #153 at 8). Second, Defendants argue that even if Kitchen's transfer did amount to an adverse action, he failed to raise a material question of fact that a causal link existed between that adverse action and his protected activity. Finally, Defendants Hightower, Steece, and Finco argue that Kitchen's retaliation claim against them fails because he failed to raise a material question of fact as to whether those individuals had the requisite level of personal involvement in his transfer to LMF for Section 1983 liability to attach. (*Id.* at 14). The Court addresses each of these arguments, in turn.

### 1. Defendants are Entitled to Qualified Immunity as to Kitchen's Retaliation Claim

Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Claims of qualified immunity are analyzed on a "fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful,

4

judged from the perspective of the reasonable official on the scene." *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011). Once the defense of qualified immunity is raised, the plaintiff bears the burden of showing that the defendants are not entitled to immunity. *See Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). *See also Beaton v. City of Allen Park*, 2015 WL 3604951, at *10 (E.D. Mich. Jun. 8, 2015) ("Thus, to defeat [defendant's] assertion of qualified immunity, 'Plaintiff must show both that, viewing the evidence in the light most favorable to [him], a constitutional right was violated and that the right was clearly established at the time of the violation.'") (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). In conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, it makes sense to begin the analysis with the second prong.

"A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." *Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (internal quotations omitted). Even viewing the facts in the light most favorable to Kitchen, it is clear that he cannot meet this standard.

As set forth above, Kitchen alleges that he was transferred from MRF to LMF in

5

retaliation for his complaints regarding the alleged theft of his shirts. Defendants argue that even taking Kitchen's allegations as true, the mere transfer of a prisoner from one prison to another does not amount to an adverse action for purposes of a First Amendment retaliation claim. Kitchen counters that "[t]ransferring a prisoner far away from his family and friends for retaliatory purposes is sufficient to constitute adverse action." (Doc. #165 at 3). Ultimately, the Court need not decide whether such a transfer, if it in fact took place as alleged, would constitute "adverse action." This is because the Court agrees with Defendants' argument that, at the time of the events in question, it was not "clearly established" that such a transfer would be unlawful or constitute "adverse action." (Doc. #153 at 8).

The Court begins with the fact that courts have held that, "[a]s a general matter, a prison official's decision to transfer a prisoner from the general population of one prison to the general population of another is not considered adverse." *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013). In other words, "[s]ince prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a person of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Only when a transfer results in more restrictions – such as an increased security level or limited access to the courts – does it potentially rise to the level of an adverse action. *See, e.g., Siggers-El*, 412 F.3d at 702 (finding that transfer could constitute adverse action where plaintiff "also suffered a number of foreseeable consequences that inhibited [his] ability to access the courts"); *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010) (transfers that "result in more restrictions and fewer privileges for prisoners are considered adverse"); *King v. Zamiara*, 680 F.3d 686 (6th Cir. 2012) (adverse action where prison officials increased the plaintiff's security level from II to III by transferring between prisons). In light of

6

this, "a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to that particular prisoner." *Hill*, 630 F.3d at 474 (citing *Siggers-El*, 412 F.3d at 701-02). If a prisoner cannot show such "foreseeable consequences," the retaliation claim fails as a matter of law. *See Siggers-El*, 412 F.3d at 704.

In support of his argument, Kitchen relies solely on a Report and Recommendation issued by this Court almost three years ago related to this same issue. (Doc. #165 at 3) (citing Doc. #85). Yet in that Report and Recommendation this Court did not conclude that a transfer "far away" from family would necessarily constitute "adverse action." Rather, it merely noted:

> Courts have recognized that, under certain circumstances, a transfer to a facility "far away from [a plaintiff's] relatives[] arguably may amount to adverse action." *Moses v. Braman*, 2015 WL 1737062, at *3 (W.D. Mich. Apr. 16, 2015) (citing *Pasley v. Conerly*, 345 F. App'x 981 (6th Cir. 2009) (holding that a threat to transfer a prisoner to another institution far from his family was sufficiently adverse to be actionable)).

(*Id.* at 7).

Moreover very recently, a number of Sixth Circuit panels have held that a prison transfer would not constitute "adverse action" simply because it moved the prisoner farther away from those who visited him. For example, in *Smith v. Weers*, No. 17-1504, 2018 WL 2087122, at *4 (6th Cir. Jan. 2, 2018), the Sixth Circuit held that "a prison transfer does not constitute an adverse action simply because it makes it more difficult for friends and family to visit the prisoner." Similarly, in *Johnson v. Hoffner*, No. 17-2102, 2018 U.S. App. LEXIS 10139, at *1-2 (6th Cir. Apr. 20, 2018), the Sixth Circuit held that "transferring a prisoner to 'an institution [that] was located farther away from those who visited him' did not rise to the level of an adverse action." Both the *Smith* and *Johnson* courts relied on *Friedman v. Corr. Corp. of Am.*, 11 F. App'x. 467, 471 (6th Cir. 2001), in which the Sixth Circuit held that the transfer of a prisoner who had been about 100 miles away from his visitors to a prison that was about 300 miles away

7

from them was, at least in the absence of "aggravating circumstances," "not sufficient to support a showing of 'adverse action' for purposes of a retaliation claim."

In short, even if Kitchen could establish that his transfer to LMF made it more difficult for his family and friends to visit him,[1] there is, *at best*, conflicting Sixth Circuit case law on whether such a transfer would constitute "adverse action." *Anderson v. True*, No. CV 15-11703, 2016 WL 11259040, at *7 (E.D. Mich. Nov. 30, 2016), report and recommendation adopted, 2017 WL 1044992 (E.D. Mich. Mar. 20, 2017). Indeed, as noted above, very recent Sixth Circuit decisions suggest it would not. Accordingly, even taking the evidence in the light most favorable to Kitchen, he failed to show that he had a clearly established right not to be transferred to a prison farther away from family and friends who visited him, or that such a transfer would constitute "adverse action" for purposes of a retaliation claim. Defendants are thus entitled to qualified immunity as to Kitchen's retaliatory transfer claim, and their motion for summary judgment should be granted on this basis alone.

## 2. **Kitchen Failed to Raise a Material Question of Fact that a Causal Link Existed Between his Protected Activity and His Transfer to LMF**

Even if Kitchen's transfer could constitute an adverse action, and qualified immunity was not appropriate, his First Amendment retaliation claim nevertheless fails because he has not established a genuine issue of material fact regarding causation. In order to satisfy the causation element of a *prima facie* case for retaliation, the plaintiff "must show that the decision was motivated, at least in part, by the plaintiff's protected activity." *Neal v. Nowack*, 2010 WL 3277863, at *4 (E.D. Mich. July 9, 2010) (citing *Thaddeus-X*, 175 F.3d at 399). However, "[b]are allegations by the plaintiff of malice on the part of a defendant are not enough to

---

[1] Kitchen presented no evidence as to whether this was, in fact, the case or whether any of the Defendants knew it to be so prior to his transfer being effectuated.

establish retaliation claims." *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Once the plaintiff has satisfied his burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *See Neal*, 2010 WL 3277863, at *4 (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)).

In this case, Defendants have come forward with evidence – in the form of sworn affidavits, testimony, and documents – that Kitchen's complaints about the "stolen" shirts were not a motivating factor in the decision to transfer him to LMF. Specifically:

- **Bernard Scott:** Bernard Scott is employed as an Administrative Assistant for the MDOC. (Doc. #153-5 ("Scott Aff.") at ¶ 1). Scott avers in his affidavit that he was the one responsible for coordinating Kitchen's transfer, and that he did so without any input or direction from any of the Defendants in this action. Rather, Scott explains that during the time in question, John Bennett was the statewide coordinator of the MDOC's Violence Prevention Program ("VPP"), which, at the time, was offered at MRF, but not LMF. On January 7, 2014, which is *before* the date when *Kitchen* contends[2] he filed the grievance about the shirts, Bennett e-mailed Scott asking him to identify "a few" inmates who were eligible to be enrolled in the VPP. (Doc. #153-5 at 10). Scott e-mailed Bennett back the next day (still before Kitchen's grievance), identifying a handful of eligible inmates, including prisoner Leroy Hoskins who, at the time, was housed at LMF. (*Id.* at 7-10). As Scott explained in his affidavit, this set in motion Hoskins' transfer to MRF and Kitchen's transfer out of MRF, the two going hand-in-hand because of the existence of a Special Offender Problem Notice ("SPON") between the two which prevented them from being housed at the same facility together:

    > 3. I was the person who selected Hoskins #202527 for enrollment in the Violence Prevention Program (VPP) at Macomb Correctional Facility (MRF). Hoskins was transferred from Alger Correctional Facility (LMF) to MRF in January 2014 due to me selecting him for transfer for enrollment in the VPP. I selected Hoskins and approved the transfer because he was next on the list and a spot opened up in the VPP at MRF. It was my job to coordinate such transfers for VPP enrollment. None of the defendants in this lawsuit contacted me or had any influence on my decision to enroll Hoskins in VPP at MRF.

    > 4. I am also the person who selected Prisoner Kitchen #189265 to be

---

[2] *See infra* at 11 n. 3.

> transferred from MRF to LMF. I made that transfer for safety and security reasons, as there was a documented Special Problem Offender Notice between Kitchen and Hoskins, meaning they were not supposed to house at the same facility. When a SPON issue like this arises, it is standard practice to do a one-for-one trade. In other words, the facility sending a prisoner is the facility that receives back the prisoner being transferred out. That is why Kitchen was transferred to LMF (where Hoskins came from) as opposed to any other facility. None of the defendants in this lawsuit contacted me or had any influence on my decision to transfer Kitchen out of MRF.

(Scott Aff. at ¶¶ 3-4). In other words, as Scott testified at his deposition, Kitchen's transfer to LMF was "reactionary simply due to the request of Hoskins's transfer." (Doc. #166-2 at 8). Attached to Scott's affidavit are contemporaneous e-mails that are largely consistent with Scott's averments, and which, at a minimum, do not support Kitchen's position in any way. For instance, Scott provides an e-mail chain between he and Bennett which started on January 7, 2014, when Bennett advised Scott, "Need a few replaced at MRF for Martinez." (Doc. #153-5 at 10). Scott responded by providing a number of eligible prisoners, one of which was Hoskins. (*Id.* at 7-8). The only assertion which is not clearly corroborated by the e-mail chain is Scott's assertion that he "selected Hoskins and approved the transfer because he was next on the list and a spot opened up in the VPP at MRF." (Scott Aff. at ¶ 3). It is not clear from the list that Scott e-mailed to Bennett that Hoskins was, in fact, "next," and it appears that ultimately, Bennett instructed Scott that "The 2 at the bottom from LMF are good to be transferred." (Doc. #153-5 at 7). Regardless, Bennett is not a defendant in this action, and Kitchen has presented no evidence whatsoever indicating that he acted at the behest of any of the Defendants.

- **Defendant Edward Hightower:** Defendant Hightower is employed as a Corrections Officer at MRF. (Doc. #72-2 at ¶ 1). Hightower averred that he is not involved in the decision-making process with respect to prisoner transfers, was not aware of any "investigation" into his alleged theft of Kitchen's shirts, and played "no role whatsoever" in Kitchen's transfer to LMF. (*Id.* at ¶¶ 4-5).

- **Defendant Kristopher Steece:** Defendant Steece is employed as an Inspector at MRF. (Doc. #72-7 at ¶ 1). Steece averred that he is not involved in the transfer of prisoners, did not request Kitchen's transfer, and "took no action for the purpose of retaliating against prisoner Kitchen." (*Id.* at ¶ 4).

- **Defendant George Stephenson:** Defendant Stephenson is employed as a Deputy Warden at MRF. (Doc. #72-5 at ¶ 1). He averred that Kitchen "was transferred out of MRF to accommodate bedspace for an incoming prisoner requiring VPP programming . . . ." (*Id.* at ¶ 3). Stephenson asserted that the transfer was "not retaliatory" and "would have occurred regardless of [Kitchen's] complaints against Defendant Hightower." (*Id.*).

- **Defendant Frank Sgambati:** Defendant Sgambati is employed as an Assistant Resident Unit Supervisor (ARUS) at MRF. (Doc. #72-6 at ¶ 1). Sgambati averred that he completed a Security Classifications Screen for Kitchen "as required by policy." (Doc. #153 at 6). In his affidavit, Sgambati indicated that he would have completed the screen for Kitchen "regardless of any complaints prisoner Kitchen may have made." (Doc. #72-6 at ¶ 3).

- **Defendant Thomas Finco:** Defendant Finco – who was employed as Deputy Director of the Correctional Facilities Administration for the MDOC from October 1, 2011 to June 30, 2015 – averred that he did not recommend Kitchen's transfer to LMF, nor was he consulted regarding this transfer. (Doc. #72-8 at ¶¶ 1,8).

Kitchen failed to present evidence that raises a genuine issue of material fact about any of the foregoing. Instead, he merely raises three issues which, at best, amount to speculation about the salient issue of causation:

- **Timing:** Kitchen asserts that in the weeks prior to receiving his transfer order, he filed "kites" and a grievance regarding Defendant Hightower's alleged theft of the shirts Kitchen had ordered. (Doc. #165 at 10).[3] Kitchen attempts to correlate prisoner Hoskins's order to return to MRF with Kitchen's grievance, which was filed immediately prior to the order. In his Response to Defendants' Motion for Summary Judgment, Kitchen states that his transfer to LMF was ordered one day after he filed a kite with Defendant Steece about the "stolen" shirts. However, the Sixth Circuit has ruled that "conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004); *see also Pasley v. Maderi*, 2014 WL 5386914, at *3 (E.D. Mich. Sept. 15, 2014). Thus, the mere fact that Kitchen was transferred to LMF shortly after complaining about the alleged theft of his shirts is, on its own, insufficient to establish causation.

- **Emails:** In his response, Kitchen also cites MRF staff email exchanges with the subject line "Kitchen Done" from Defendant Stephenson to Defendant Sgambati.

---

[3] Defendants point out that Kitchen listed the date on his grievance as "1/20/14," and in the grievance's contents, Kitchen wrote that he sent a kite to the property room on "1/21/14" and received no response. Defendants argue that Kitchen "would not have sent a kite on January 21 and also say in a grievance the same day that he had received no response to a kite that he had just sent." (Doc. #153 at 17). Therefore, Defendants argue that the grievance must not have been filed before Hoskins's transfer on January 21, 2014. (*Id.*). In response, Kitchen asserts that the date "1/21/14" was an error, and should instead read "1/12/14." (Doc. #165 at 11). Regardless, this particular argument of Defendants is speculative and does not factor into the Court's decision.

11

(Doc. #165 at 10, 47-50[4]). However, the Court has reviewed the e-mails (*id.* at 47-50), and none of their contents could even arguably be characterized as evidencing a retaliatory motive for Kitchen's transfer. Indeed, the contents are completely innocuous. (*Id.*).

- **Hoskins's Transfer:** Finally, Kitchen questions the motive behind transferring Hoskins back to MRF less than six weeks after Hoskins was transferred out of MRF "for protection." (Doc. #165 at 9). Kitchen argues that Defendants "wanted [him] out of the way and therefore sent to LMF, and to fulfill that request Scott had no alternative but to transfer Hoskins back to MRF . . . ." (*Id.* at 10). Again, this is simply a *theory* advanced by Kitchen, which is insufficient to overcome Defendants' *evidence*. *See Alexander*, 576 F.3d at 558. Moreover, Scott testified at his deposition that "[Hoskins'] case was reviewed and there was no immediate threat, there was no determination or reason for security concerns, so he was transferred back [to MRF]. . . . there was no security concern. It was reviewed and determined that he could be placed back [at MRF] and that there was no security concern upon request of the second transfer." (Doc. #165 at 20-21). Again, Kitchen's subjective disbelief of Scott's unrebutted testimony is insufficient to raise a material question of fact on this issue. *See Alexander*, 576 F.3d at 558.

In sum, the foregoing shows that Kitchen failed to raise a material question of fact that a causal link existed between his protected activity and his transfer to LMF, or that any of the Defendants made the decision for him to be transferred to that facility. Accordingly, Defendants' motion for summary judgment should be granted. *See Richards v. Sheltrown*, 2015 WL 1810254, at *6 (E.D. Mich. Apr. 17, 2015) ("[t]here can be no causation where the defendant is not the decision-maker.") (citing *Smith*, 260 F.3d at 1038). *See also McCaskill v. Dettloff*, 2014 WL 7403857, at *4 (E.D. Mich. Dec. 30, 2014) (generally speaking, a causal connection cannot be established when the accused prison official was not the decision-maker with regard to the alleged act of retaliation).

---

[4] Actually, these e-mails appear to be from more than one chain; some are dated January 29, 2014, and others are dated March 26, 2014, and there are at least three different "Subject" lines: "Kitchen 189265," "kitchen [sic] 189265" and "189265 Kitchen Done".

12

### 3. **Defendants Hightower, Steece, and Finco Are Entitled to Summary Judgment because Kitchen Did Not Raise a Material Question of Fact as to whether Each Had the Requisite Level of Personal Involvement in His Transfer to LMF for Section 1983 Liability to Attach**

In their motion, Defendants Hightower, Steece, and Finco argue that they are entitled to summary judgment because they lacked any personal involvement in Kitchen's transfer. (Doc. #153 at 18-23). In order to demonstrate liability under Section 1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). The plaintiff also must make a clear showing that each defendant was personally involved *in the activity that forms the basis of the complaint*. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under Section 1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's mere awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger Section 1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Rather, liability under Section 1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

As explained above, Defendants Hightower, Steece, and Finco presented unrebutted evidence that they had no involvement whatsoever in the decision to transfer Kitchen to LMF. (Doc. #72-2 at ¶¶ 4-5; Doc. #72-7 at ¶ 4; Doc. #72-8 at ¶ 8). Further, that evidence is consistent

with the e-mail correspondence between Bennett and Scott, as well as Scott's affidavit and testimony, all of which is also discussed above. Again, at the summary judgment stage, Kitchen's subjective disbelief of the evidence is insufficient to raise a material question of fact. *See Alexander*, 576 F.3d at 558. Accordingly, Defendants Hightower, Steece, and Finco are entitled to summary judgment.

## II. RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(Doc. #153)** be **GRANTED**.

Dated: July 17, 2018                                 s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                                  United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation and Order will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager